TINA HARDISON AND DALTON HARDISON, PLAINTIFFS
v.
KIA MOTORS AMERICA, INC., DEFENDANT

No. COA12-981

Filed 19 March 2013

**1. Motor Vehicles—Lemon Law—disclosure requirement**

An automobile company met its disclosure requirement under
N.C.G.S. § 20-351.5 (the Lemon Law) where the manual contained a
section directed solely at consumers in North Carolina, instructions
to notify the company in writing when there is an unresolved prob-
lem or nonconformity, and an address to which to send this notice.

**2. Motor Vehicles—Lemon Law—notice of nonconformity**

There was no genuine issue of fact as to the sufficiency of plain-
tiffs' notice of the nonconformity to an automobile dealer under
N.C.G.S. § 20-351.5 (the Lemon Law) and summary judgment was
properly granted. Despite the letter being sent to a different Irvine,
California address than the one listed in the owner's manual, de-
fendant responded to plaintiffs' notice by contacting their attorney,
making settlement offers, and ultimately setting up an inspection.

3. **Motor Vehicles—Lemon Law—reasonable period of nonconformity**

There was no genuine issue of material fact in a Lemon Law case as to whether defendant auto company was given a reasonable period in which to repair a nonconformity in a new automobile where plaintiffs notified defendant by letter that plaintiffs should be contacted within fourteen days. Although defendant contended that the fifteen-day time period specified in the statute for making repairs begins when the manufacturer or its agent obtains access to the vehicle for inspection and repair, this interpretation did not comport with the rationale behind the North Carolina Lemon Law.

4. **Attorney Fees—Lemon Law—reasonable actions**

The trial court erred in a Lemon Law action by awarding plaintiffs attorney fees where, beyond failing to act as quickly as prescribed by statute to fully resolve plaintiffs' concerns, the record was devoid of evidence that defendant did anything but act reasonably from the time it learned of plaintiffs' complaints about their vehicle.

5. **Damages and Remedies—Lemon Law—treble damages**

The trial court did not err in a Lemon Law action by denying plaintiffs' motion for summary judgment on the issue of treble damages where, although defendant violated N.C.G.S. § 20-351.3 by failing to inspect and repair the auto within the fifteen-day cure period, the evidence did not support a finding that defendant acted unreasonably in its handling of plaintiffs' situation, much less that they "unreasonably refused" to comply with the statute.

Appeal by defendant and cross–appeal by plaintiffs from order entered 17 February 2012 by Judge Kenneth F. Crow in Craven County Superior Court. Heard in the Court of Appeals 11 February 2013.

*Luxenburg & Levin, LLC, by Mitchel E. Luxenburg, for plaintiffs–appellees/cross–appellants.*

*Brown, Crump, Vanore & Tierney, L.L.P., by Andrew A. Vanore, III, for defendant–appellant.*

MARTIN, Chief Judge.

Plaintiffs Tina and Dalton Hardison brought this action alleging violations of the New Motor Vehicles Warranties Act, ("the North Carolina Lemon Law"), N.C.G.S. § 20-351, against defendant Kia Motors America, Inc. After a hearing on the parties' cross–motions for summary

judgment, the trial court granted plaintiffs' motion on the issue of liability and awarded attorney's fees, but denied their prayer for treble damages pursuant to N.C.G.S. § 20-351.8(2). Defendant's motion for summary judgment was denied. Defendant appealed from the grant of summary judgment in favor of plaintiffs and the denial of its motion for summary judgment; plaintiffs have cross–appealed the denial of treble damages. We affirm the trial court's order with regard to liability and trebling of damages, but reverse the award of attorney's fees.

The evidence at the hearing tended to show: plaintiffs purchased a Kia Borrego ("the Borrego") at Stevenson Kia in Jacksonville on 15 March 2010. The Borrego is covered by a sixty-month, 60,000-mile Express Limited Warranty, the details of which are located in the Borrego's manual. Shortly thereafter, the Borrego began exhibiting a "no start" condition and needed to be towed to Kia of New Bern ("the dealership"), an authorized agent of defendant, for repair. Plaintiffs' Borrego was ultimately taken to the dealership for repair four times between 12 April and 19 July 2010, each time exhibiting the same "no start" condition. The dealership was unsuccessful in its attempts to identify the cause of the problem or to repair the Borrego.

Plaintiffs obtained counsel, who sent a letter to defendant's National Consumer Affairs Department on 22 July 2010 alleging violations of the North Carolina Lemon Law. Defendant's Consumer Affairs Department received the letter on 27 July 2010, and responded to the letter via email on 5 August and via letter faxed to plaintiffs' counsel on 6 August 2010. The letter instructed plaintiffs to bring the Borrego to the dealership on 30 August 2010 for inspection and repair the following day by a Kia professional.

On 23 August 2010, prior to the 30 August 2010 scheduled drop-off, plaintiffs had to take the Borrego to the dealership when it failed to start again. Plaintiffs were allegedly unaware of the inspection and repair appointment scheduled for 31 August 2010 at that time. On August 31st, because the Borrego remained at the dealership, Mark Ramsey, a Field Technical Representative for defendant, inspected the Borrego, conducted several electrical tests, and discovered that the audio unit was malfunctioning and drawing on the battery when the car was turned off, thereby causing the "no start" condition. Ramsey met with plaintiff Dalton Hardison and explained the problem to him. Thereafter, the dealership ordered a replacement audio unit and Ramsey installed it on or about 1 September 2010. Plaintiffs picked up the Borrego on 3 September 2010 and have not experienced the "no start" condition again.

---

On appeal, defendant contends the trial court erred by granting plaintiffs' motion for summary judgment, ordering that defendant repurchase the Borrego pursuant to N.C.G.S. § 20-351.3(a) and awarding plaintiffs attorney's fees pursuant to N.C.G.S. § 20-351.8(3)(a). Plaintiffs contend the trial court erred by determining they are not entitled to the trebling of damages under N.C.G.S. § 20-351.8(2).

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

I.

**[1]** North Carolina's New Motor Vehicles Warranties Act, N.C.G.S § 20-351, provides remedies to consumers where a new motor vehicle does not conform to express warranties. N.C. Gen. Stat. § 20-351 (2011). Under N.C.G.S. § 20-351.3, the remedy of repurchase of the vehicle or refund of the purchase price is provided where:

> [T]he manufacturer is unable, after *a reasonable number of attempts*, to conform the motor vehicle to any express warranty by repairing or correcting, or arranging for the repair or correction of, any defect or condition or series of defects or conditions which substantially impair the value of the motor vehicle to the consumer . . . .

N.C. Gen. Stat. § 20-351.3(a) (2011) (emphasis added). N.C.G.S. § 20-351.5 creates a presumption that a "reasonable number of attempts have been undertaken" if "the same nonconformity has been presented for repair to the manufacturer, its agent, or its authorized dealer *four or more times* but the same nonconformity continues to exist." N.C. Gen. Stat. § 20-351.5(a)(1) (2011) (emphasis added). The presumption has been referred to as an "initial eligibility hurdle[]." *Anders v. Hyundai Motor Am. Corp.*, 104 N.C. App. 61, 65, 407 S.E.2d 618, 621, *disc. review denied*, 330 N.C. 440, 412 S.E.2d 69 (1991). For the presumption to apply, the consumer must have notified the manufacturer directly in writing of the defect and allowed the manufacturer a reasonable period, not to exceed fifteen calendar days, in which to make the repairs. N.C. Gen. Stat. § 20-351.5(a). The statute also requires that the manufacturer "clearly and conspicuously disclose to the consumer in the warranty or owners

manual that written notification of a nonconformity is required before a consumer may be eligible for a refund or replacement of the vehicle" and must "include in the warranty or owners manual the name and address where the written notification may be sent." *Id.*

Defendant argues there are genuine issues of material fact as to whether plaintiffs gave notice in accordance with the instructions in the warranty and whether they afforded defendant the requisite reasonable opportunity to repair. Plaintiffs respond that defendant's notice to consumers was defective because it was not "clear and conspicuous," excusing them from the written notice requirement.

Defendant's manual contains a section labeled "When you need to talk to Kia and Roadside Assistance," beginning on page 43, just after the full text of the warranty. Just below the first paragraph in that section, the manual informs the consumer that "[a]lso included [in the manual] are basic requirements established by your state regarding Lemon Laws for your reference." On pages 45–47, defendant outlines various steps for obtaining help when a "situation arises that has not been addressed to your satisfaction." In this section, defendant's manual states, "[t]he following section has been developed with information on contacting Kia and on the basic provisions of your State's 'Lemon Laws.' " On the page labeled, "NOTICE TO CONSUMERS STATE OF NORTH CAROLINA," the manual states that if "Kia or its dealers have not repaired the vehicle after a reasonable number of repair attempts . . . you may be entitled under the provisions of your state 'Lemon Law' to a replacement or repurchase of the vehicle." It directs the consumer to "1) notify Kia at the address below, by certified mail, of the problem with your vehicle at least 10 days before filing suit; and 2) provide Kia an opportunity to repair it." As the manual contained a section directed solely at consumers in North Carolina, instructions to notify Kia in writing when there is an unresolved problem or nonconformity, and gave an address to which to send this notice, we conclude that defendant met its disclosure requirement under N.C.G.S. § 20-351.5. *Cf. Anders,* 104 N.C. App. at 67, 407 S.E.2d at 622 (holding that the manufacturer's disclosure was deficient when its manual made no mention of written notification requirement).

[2] Thus, we must determine whether there are genuine issues of fact as to the sufficiency of plaintiffs' notice to defendant that the Borrego was nonconforming and whether they afforded defendant a reasonable opportunity to repair.

Defendant first argues that plaintiffs' notice was deficient because it was sent to an address different from that listed in the warranty section

of the vehicle manual. Plaintiffs' counsel sent the letter to the Kia Motors America National Consumer Affairs Department in Irvine, California, rather than the "Consumer Assistance Center" at a different post office box in Irvine, California. The letter was stamped by the Consumer Affairs Department as received on 27 July 2010. The letter specified that plaintiffs' vehicle had been taken to the dealership on repeated occasions for "attempted repairs to non-conformities that have caused a substantial impairment to the use, value and/or safety of the vehicle" and notified defendant that the plaintiffs were "revoking acceptance of [the] vehicle." Plaintiffs alleged violations of the North Carolina Lemon Law and demanded that Kia accept return of the vehicle and refund the purchase price. Despite the letter being sent to a different Irvine, California address than the one listed in the manual, defendant responded to plaintiffs' notice by contacting their attorney, making settlement offers, and ultimately setting up an inspection. Therefore, we conclude that there is no genuine issue of fact as to the sufficiency of plaintiffs' notice of the nonconformity under N.C.G.S. § 20-351.5.

[3] However, defendant further contends there is a genuine issue of material fact as to whether it was given a reasonable period in which to repair the nonconformity. Defendant contends the fifteen-day time period specified in the statute for making the repairs begins when the manufacturer or its agent obtains access to the vehicle for inspection and repair. We disagree.

In *Eugene Tucker Builders, Inc.*, 175 N.C. App. 151, 152, 622 S.E.2d 698, 699 (2005), *cert. denied*, 360 N.C. 479, 630 S.E.2d 926 (2006), this Court recognized that "[i]n compliance with the statute, plaintiff requested that defendant cure the alleged defect within 15 days of receipt of the letter" and that defendant repaired the vehicle "[d]uring this cure period." This suggests that the fifteen-day period begins when the manufacturer receives written notice of the nonconformity. Moreover, to interpret the "cure period" as beginning when the manufacturer obtains possession of the car to inspect or repair it could lead to absurd results, i.e., the manufacturer or agent could wait weeks or even months after receiving the notice to set up an inspection or to repair the vehicle, as long as it resolves the problem within fifteen days of receipt of the car. This interpretation does not comport with the rationale behind the North Carolina Lemon Law, which is to provide "private remedies against motor vehicle manufacturers for persons injured by new motor vehicles failing to conform to express warranties," and to set standards that induce manufacturers to be prompt and fair in their resolution of consumer complaints. N.C. Gen. Stat. § 20-351.

Here, plaintiffs' letter closed by stating "if you wish to resolve this matter amicably, please contact us within 14 days . . . . Should you fail to contact us, we will be left with no alternative but to commence legal proceedings." While defendant did contact plaintiffs'· attorney within that fourteen-day window, first by email and then via faxed letter, defendant did not actually inspect or repair the vehicle until at least 31 August 2010, more than a month after receiving plaintiffs' letter. Therefore, plaintiffs afforded "a reasonable period, not to exceed 15 calendar days, in which to correct the nonconformity," and defendant failed to timely repair the Borrego.

Defendant has not pointed us to any evidence in the materials before the trial court which would give rise to a genuine issue of fact as to the applicability of the "initial eligibility hurdle" created by the presumption in N.C.G.S. § 20-351.5 or as to the nonconformity of the Borrego. Therefore, the trial court did not err in determining that plaintiffs are entitled to summary judgment requiring defendant to repurchase the vehicle under N.C.G.S. § 20-351.3.

II.

[4] Defendant also contends the trial court erred in awarding plaintiffs attorney's fees because there is no evidence that defendant acted unreasonably in resolving the matter. We agree.

A trial court can award attorney's fees as relief under N.C.G.S. § 20-351.8(3) if "[t]he manufacturer unreasonably *failed or refused* to fully resolve the matter which constitutes the basis of such action." N.C. Gen. Stat. § 20-351.8(3)(a) (2011) (emphasis added). "The statute places an award of attorney's fees within the discretion of the trial court. We will not second-guess a trial court's exercise of its discretion absent evidence of abuse. An abuse of discretion occurs only when a court makes a patently arbitrary decision, manifestly unsupported by reason." *Buford v. Gen. Motors Corp.*, 339 N.C. 396, 406, 451 S.E.2d 293, 298 (1994).

While "[w]e agree that there is a distinction between refusing to comply and failing to comply with the Act," the latter seemingly indicating that attorney's fees can be awarded for an unintentional failure to resolve the consumer's issue, we conclude the evidence presents no issue of fact as to the question of whether defendant unreasonably failed to resolve the matter. *Taylor v. Volvo N. Am. Corp.*, 339 N.C. 238, 256, 451 S.E.2d 618, 627 (1994). Beyond the fact that defendant failed to act as quickly as prescribed by statute to fully resolve plaintiffs' concerns, the record is devoid of evidence that defendant did anything but "[act] altogether reasonably from the time it learned of plaintiffs' complaints about their

vehicle." *Buford*, 339 N.C. at 406–07, 451 S.E.2d at 298. Therefore, because defendant "addressed their concerns in a prompt and honest manner," *see id.* at 405, 451 S.E.2d at 298, we find that the trial court erred in awarding plaintiffs attorney's fees and, accordingly, reverse on this issue.

### III.

**[5]** By their cross-appeal, plaintiffs contend the trial court erred by failing to award treble damages as a matter of law because defendant unreasonably failed to repurchase or replace the Borrego. We disagree.

Under N.C.G.S. § 20-351.8, the trial court may award monetary damages as relief "to the injured consumer in an amount fixed by the verdict." N.C. Gen. Stat. § 20-351.8(2). Further, "[s]uch damages shall be trebled upon a finding that the manufacturer unreasonably *refused* to comply with G.S. 20-351.2 and G.S. 20-351.3." *Id.* (emphasis added).

Although we find that defendant violated N.C.G.S. § 20-351.3 by failing to inspect and repair the Borrego within the fifteen-day cure period, we agree with the trial court that the evidence does not support a finding that defendant acted unreasonably in its handling of plaintiffs' situation, much less that they "unreasonably refused" to comply with N.C.G.S. § 20-351.3 so as to justify the award of treble damages. This Court previously awarded treble damages under N.C.G.S. § 20-351.8(2) in *Taylor*, 339 N.C. at 256, 451 S.E.2d at 628, where the defendant "did nothing more than to attempt to make one phone call to plaintiff's attorney, which failed." Here, after receiving plaintiffs' letter on 27 July 2010, defendant successfully contacted plaintiffs' attorney via faxed letter on 6 August 2010. Defendant made several settlement offers and ultimately set up an inspection and repair, although outside of the fifteen-day cure period. When defendant's representative Mark Ramsey performed the inspection on the Borrego, he was able to identify and resolve the problem within a few days. For this reason, we find the trial court did not err in this case by denying plaintiffs' motion for summary judgment on the issue of treble damages.

Affirmed in part, reversed in part.

Judges McGEE and CALABRIA concur.